**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **ANGEL PABON** | : | **CIVIL ACTION** |
| | : | |
| v. | : | |
| | : | |
| **SUPERINTENDENT, S.C.I.** | : | |
| **MAHANOY**, *et al.* | : | **NO.  07-4199** |

## MEMORANDUM

RESTREPO, J.                                                                 NOVEMBER 6, 2014

Before the Court is a Petition for Writ of Habeas Corpus filed by Angel Pabon pursuant to 28 U.S.C. § 2254.  Petitioner is currently incarcerated at a state correctional institution ("SCI") in Pennsylvania.  For the reasons which follow, and following an evidentiary hearing and oral argument, the habeas petition should be dismissed as time-barred.

## BACKGROUND AND PROCEDURAL HISTORY

Following a jury trial in the Court of Common Pleas of Philadelphia, Pabon was convicted of two counts of Murder and Aggravated Assault, Conspiracy, Possession of an Instrument of Crime, and Recklessly Endangering Another Person.  *See* Hab. Pet. ¶¶ 1-6; *see also Pabon v. Superintendent S.C.I. Mahanoy*, 654 F.3d 385, 391 (3d Cir. 2011).  Pabon was sentenced to two consecutive life sentences for the murder convictions, a prison term of six to twenty (6-20) years for conspiracy, concurrent prison terms of five to twenty (5-20) years for each aggravated assault conviction, one to two (1-2) years in prison for possessing an instrument of crime, and one to two (1-2) years in prison for reckless endangerment.  *Id.*

On direct appeal, the Superior Court of Pennsylvania affirmed the convictions on November 16, 2000.  *See Commonwealth v. Pabon*, 768 A.2d 886 (Pa. Super. 2000) (table). Pabon's petition for allowance of appeal was denied by the Supreme Court of Pennsylvania on May 14, 2002.  *See Commonwealth v. Pabon*, 798 A.2d 1288 (Pa. 2002) (table).

Pabon filed a *pro se* petition pursuant to Pennsylvania's Post Conviction Relief Act ("PCRA"), 42 Pa. C.S.A. §§ 9541-46.  *See* Pabon, 654 F.3d at 391.  Following appointment of counsel, petitioner filed an amended PCRA petition.  *Id.*  Relief was denied by the PCRA Court on May 20, 2004, and on March 21, 2006, the Superior Court of Pennsylvania affirmed the denial of PCRA relief.  *See Commonwealth v. Pabon*, 898 A.2d 1131 (Pa. Super. 2006) (table); *see also Pabon*, 798 A.2d at 391.  The Supreme Court of Pennsylvania denied allowance of appeal on August 8, 2006, and the United States Supreme Court denied *certiorari* on March 26, 2007.  *See Commonwealth v. Pabon*, 906 A.2d 541 (Pa. 2006) (table), *cert. denied*, 127 S. Ct. 1887 (2007).

Although the Clerk of Court received Pabon's § 2254 petition on October 5, 2007, the petition is deemed filed on the date it was given to prison officials for mailing, which in this case was no earlier than September 20, 2007.[1]  The Honorable Eduardo C. Robreno referred the petition for a Report and Recommendation ("R&R"), and it was thereafter recommended that the petition be dismissed as time-barred.  Petitioner filed Objections to the R&R arguing that he was entitled to have the time for filing equitably tolled because of his inability to read, write and speak English and the denial of access to Spanish language materials or a translator while in

---

1.  The federal prisoner mailbox rule provides that a document is deemed filed on the date it is given to prison officials for mailing.  *See Pabon*, 798 F.3d at 391 n.8 (citing *Burns v. Morton*, 134 F.3d 109, 113 (3d Cir. 1998)).  Here, Pabon signed his petition on Sept. 20, 2007, *see* Hab. Pet. at 11, so he could not have delivered it to prison officials for mailing any earlier than that date.

prison.  *See Pabon*, 798 F.3d at 391.  Noting that petitioner's equitable tolling argument had not been presented prior to the filing of the R&R, Judge Robreno addressed and overruled petitioner's objections, adopted the R&R, and dismissed the habeas petition as untimely.

Pabon filed a timely notice of appeal in the Court of Appeals and, subsequently, an application for a Certificate of Appealability ("COA").  *Id.*  The Court of Appeals granted the COA on "whether the habeas petition was timely filed under 28 U.S.C. § 2244(d), including the question whether there is a basis for equitably tolling the limitations period."[2]  *Id.*

The Court of Appeals noted that while this Circuit "has not yet addressed whether a language deficiency may constitute an extraordinary circumstance for the purposes of equitable tolling," *see Pabon*, 654 F.3d at 399, "we now hold that inability to read or understand English, combined with denial of access to translation or legal assistance, can constitute extraordinary circumstances that trigger equitable tolling," *id.* at 400.

The Court observed that in determining whether equitable tolling should be granted in this case, two questions must be addressed: (1) whether the petitioner faced extraordinary circumstances that stood in the way of timely filing; and (2) whether he exercised reasonable diligence.  *Id.* at 399 (citing *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005)); *see Holland*, 560 U.S. at 649 (citing *Pace*, 544 U.S. at 418); *Munchinski v. Wilson*, 694 F.3d 308, 329 (3d Cir. 2012) (citing *Brown v. Shannon*, 322 F.3d 768, 773 (3d Cir. 2003)).  Finding that "Pabon was reasonably diligent in pursuing his claims," the Court "remanded for an evidentiary hearing on

_____

2.  In *Holland v. Florida*, 130 S. Ct. 2549, 2560 (2010), the Supreme Court confirmed that equitable tolling may be applied to AEDPA's statutory limitations period.  *See Pabon*, 654 F.3d at 399.

the extraordinary circumstances prong of Pabon's equitable tolling claim."[3]  *Pabon*, 654 F.3d at

403.  On remand to this Court, an evidentiary hearing was held over the course of several days,

oral argument was held, and the parties have submitted their respective briefs.[4]

## DISCUSSION

Pabon concedes that his federal habeas petition was not timely under AEDPA's 1-year

statute of limitations, but he contends that equitable tolling is warranted.  *See Pabon*, 654 F.3d at

387.  While "a litigant seeking equitable tolling [of AEDPA's 1-year statute of limitations] bears

the burden of establishing two elements," *see Ross v. Varano*, 712 F.3d 784, 798 (3d Cir. 2013)

(quoting *Pace*, 544 U.S. at 418) – reasonable diligence and extraordinary circumstances

preventing timely filing – our Court of Appeals found that "Pabon was reasonably diligent in

pursuing his claims."  *Id.* at 399, 403.  Therefore, the issue before this Court is whether Pabon is

able to satisfy "the extraordinary circumstances prong of [his] equitable tolling claim."  *See*

*Pabon*, 654 F.3d at 403; *cf. United States v. Bankoff*, 514 F. Appx. 112, 114 (3d Cir. 2013)

(observing that Court lacked jurisdiction over issue which "was not within the scope of

remand").  In particular, the issue is "whether the petitioner faced extraordinary circumstances

that stood in the way of timely filing."  *See Pabon*, 654 F.3d at 399 (citing *Pace*, 544 U.S. at

---

3.  Following the remand Order of the Court of Appeals, the U.S. Supreme Court denied a petition for *certiorari* on May 21, 2012.  *See Kerestes v. Pabon*, 132 S. Ct. 2430 (2012).

4.  Although upon remand this case originally remained assigned to Judge Robreno's calendar, it was subsequently reassigned to me.

418).[5]

"There are no bright lines in determining whether equitable tolling is warranted in a given case. Rather, the particular circumstances of each petitioner must be taken into account." *Id.* at 399 (citing *Holland*, 130 S. Ct. at 2563). However, "[t]he law is clear that courts must be sparing in their use of equitable tolling." *Jones v. Morton*, 195 F.3d 153, 159 (3d Cir. 1999) (quoting *Seitzinger v. Reading Hosp. & Med. Ctr.*, 165 F.3d 236, 239 (3d Cir. 1999)); *see Pabon*, 654 F.3d at 399 (citing *Jones*, 195 F.3d at 159) ("[C]ourts need to be 'sparing in their use of' the doctrine" of equitable tolling.). Lack of understanding or knowledge of the law is not an appropriate basis to invoke equitable tolling. *See Jones*, 195 F.3d at 159; *School Dist. of Allentown v. Marshall*, 657 F.2d 16, 21 (3d Cir. 1981) ("[i]gnorance of the law is not enough to invoke equitable tolling"). Furthermore, as mentioned, the habeas petitioner bears the burden of demonstrating his entitlement to equitable tolling. *Pace*, 544 U.S. at 418; *Santana v. Thomas*,

---

5. The judgments of conviction became final in this case on Aug. 12, 2002, when the time for seeking *certiorari* on direct review in the U.S. Supreme Court expired. *See Kapral v. United States*, 166 F.3d 565, 576 (3d Cir. 1999) (holding that on direct review the limitations period of § 2244(d)(1)(A) begins to run at the expiration of the time for seeking review in the U.S. Supreme Court). Therefore, Pabon had one year after that date, *see Sweger v. Chesney*, 294 F.3d 506, 513 (3d Cir. 2002), plus any time during which the period of limitation was tolled, to file a § 2254 petition. *See Merritt v. Blaine,* 326 F.3d 157, 161 (3d Cir. 2003). Although Pabon's PCRA petition tolled the statute of limitations under 28 U.S.C. § 2244(d)(2), *see, e.g., Swartz v. Meyers*, 204 F.3d 417, 420 (3d Cir. 2000), more than nine (9) months of the 1-year period of limitation had elapsed by the time Pabon filed his PCRA petition in May of 2003. *See, e.g., Burns*, 134 F.3d at 111. Therefore, when the Supreme Court of Pennsylvania denied allowance of appeal on Pabon's PCRA petition on Aug. 8, 2006, *see Commonwealth v. Pabon*, 906 A.2d 541 (Pa. Aug. 8, 2006) (table), Pabon had less than three (3) months to file his § 2254 petition. *See Swartz*, 204 F.3d at 419-20; *see also Lawrence v. Florida*, 127 S. Ct. 1079, 1086 (2007) (Petitions for *certiorari* in U.S. Supreme Court "do[] not toll the statute of limitations under § 2244(d)(2)."). Pabon did not file his § 2254 petition until, at the earliest, Sept. 20, 2007, *see supra* note 1, more than thirteen (13) months after Pennsylvania's Supreme Court denied allowance of appeal from the denial of PCRA relief, and more than ten (10) months after the period of limitation expired.

2014 WL 2696502, *4 (E.D. Pa. 2014).

Here, petitioner argues that his "inability to speak, read, or write English, coupled with the prison's lack of Spanish-language legal materials and repeated denials of translation assistance, are extraordinary circumstances that prevented him from timely filing his habeas petition." *Pabon*, 654 F.3d at 387.  The Third Circuit has held that "inability to read or understand English, combined with denial of access to translation or legal assistance, *can* constitute extraordinary circumstances that trigger equitable tolling." *Pabon*, 654 F.3d at 400 (emph. added).

In analyzing the extraordinary-circumstances prong, "the relevant inquiry is not whether the circumstance alleged to be extraordinary is unique to the petitioner, but how severe an obstacle it creates with respect to meeting AEDPA's [1]-year deadline." *Pabon*, 654 F.3d at 401; *see Ross*, 712 F.3d at 803-04 (citing *Pabon*).  "In addition, for a petitioner to obtain relief there must be a causal connection, or nexus, between the extraordinary circumstances he faced and the petitioner's failure to file a timely federal petition." *Id.* at 804; *see Holland*, 560 U.S. at 649 (citing *Pace*, 544 U.S. at 418) ("We have previously made clear that a 'petitioner' is 'entitled to equitable tolling' only if he shows . . . that some extraordinary circumstance stood in his way' and *prevented* timely filing.") (emph. added); *Munchinski*, 694 F.3d at 329 (citing *Brown*, 322 F.3d at 773) ("The extraordinary circumstances prong requires that the petitioner 'in some extraordinary way be[] prevented from asserting his or her rights.").

In this case, having considered the evidence submitted by the parties, Pabon has failed to satisfy his burden of demonstrating that, under the particular facts of this case, extraordinary circumstances prevented him from filing a statutorily timely habeas petition, *see Ross*, 712 F.3d

6

at 803, and equitable tolling of the 1-year statute of limitations is not warranted in this case.  *See*

*Pace*, 544 U.S. at 418.  Despite limitations Pabon may have had communicating in English

during the relevant time period, his actual limitations in using the English language, along with

the other circumstances in this case, did not constitute extraordinary circumstances preventing

him from timely filing his § 2254 petition.

The testimony of prison counselors and corrections officers from SCI-Mahanoy indicates,

among other things, that Pabon had no trouble communicating with them in English during

multiple interactions at the prison.  Corrections Officer ("CO") James Murphy testified that he

had been employed at SCI-Mahanoy for 15 years, and he had been assigned to the Restricted

Housing Unit ("RHU") since about 2005 or 2006.  *See* Evid. Hr'g 4/8/13 (Doc. 71), at 12-13.[6]

During days that Pabon was in the part of the RHU assigned to CO Murphy, Murphy would see

Pabon "four, five or six hours a day."  *Id.* at 13.  Murphy explained that "[d]uring the period in

2006 approximately," Pabon was in the part of the RHU assigned to Murphy "for a long period

of time" and Pabon "spoke English every day to [Murphy] and other officers and to inmates."  *Id.*

at 25-26.

Murphy confirmed that he never struggled to understand what Pabon was saying to him in

English, and Pabon appeared able to converse easily with the other officers and inmates in

English as well.  *Id.* at 26-27.  Moreover, not once did Pabon ever ask for a translator to be able

to talk to Murphy or other staff or inmates, and Murphy observed that Pabon was always able to

converse "clearly with everybody."  *Id.* at 27.  Furthermore, Murphy testified that he observed

---

6.  The transcript of the portion of the evidentiary hearing held on Apr. 8, 2013 is separated into
two documents: "AM SESSION ONLY" (Doc. 70); and "PM SESSION ONLY" (Doc. 71).

Pabon "spend[ing] a lot of time reading" materials such as newspapers, magazines, and library books in English.  *Id.*  Murphy also observed Pabon reading law books in English in the "mini law library" in the RHU.  *Id.* at 28.

Murphy testified that Pabon would give him inmate request lists in English "two or three times a week."  *Id.* at 29-30.  Pabon never asked for translation assistance or any help to write up his requests.  *Id.*  Murphy explained that on occasions when inmates were unable to communicate in English or needed assistance in that regard, "they will ask the CO if they can help them write a request."  *Id.*  CO Murphy has done that for such inmates or even "get him an interpreter," and Murphy testified that he would have had no problem doing the same for Pabon, but Mr. Pabon never made such a request or indicated the need for any such assistance.  *Id.* at 30-31.

Diana Beatty, a Corrections School Principal at SCI-Huntingdon and SCI-Smithfield at the time of her testimony, testified that she had worked for the Pennsylvania Department of Corrections ("DOC") since 1999.  *Id.* at 52-53.  In 2004, Ms. Beatty was a prison academic guidance counselor.  *Id.* at 53-54.  She met with Pabon at that time for an individual educational assessment and, after a discussion with him, she recommended, as an initial goal, that he earn a general equivalency diploma ("GED"), and as a secondary or alternative goal, that he obtain vocational training.  *Id.* at 55-56.  In terms of classes at the prison, Ms. Beatty recommended that Pabon attend an adult basic education class, which was taught in English.  *Id.* at 56, 58.  Ms. Beatty testified that, upon communicating with Pabon, if she had believed that he required an English-as-a-second-language ("ESL") class, she would have recommended that class, instead of the adult basic education class that she did recommend.  *Id.* at 57.

Prison test scores indicate that Pabon had an average IQ.  *Id.* at 63.  Pabon was given an

inmate orientation packet which was completed partially by Ms. Beatty and partially by Pabon at the time Ms. Beatty met with him. *Id.* at 70. These materials were offered in Spanish, and translators were also available for those inmates who requested them. *Id.* at 70-71. Indeed, Ms. Beatty testified that "at the beginning of an orientation session [she] would ask if there's anyone that needed that type of assistance and then [she] would seek an inmate tutor that [the prison] had on-hand in the building to come in and sit with [the inmate] to interpret." *Id.* at 70-71. Pabon did not request the Spanish forms, but instead he chose to answer the forms which were printed *in English*. *Id.* at 71. The record shows that by the Spring term of 2002 Pabon had been taking math and reading GED-preparatory classes. *Id.* at 78.

William Wetzel was employed by the DOC as a CO for more than 24 years, and he retired in 2010. *See* Evid. Hr'g 4/12/13 (Doc. 74), at 40. By approximately 2002 to 2005, Wetzel was an RHU Lieutenant at SCI-Mahanoy, essentially "in charge of the unit." *Id.* at 40-41. After 2005, he was a Lieutenant and shift commander in general population at Mahanoy until he retired. *Id.* at 41. For approximately a year from 2004 to 2005, during his time as Lieutenant in the Mahanoy RHU, Wetzel "made rounds in the unit" and would communicate with Pabon in English. *Id.* at 42, 56. Lt. Wetzel also communicated with Pabon in English during Program Review Committee ("PRC") meetings.[7] *Id.* To his recollection, Pabon never requested a translator for interactions during Wetzel's RHU shifts, including during PRC meetings. *Id.* Moreover, if a Spanish-speaking inmate, or any inmate, for that matter, wanted assistance from

---

7. Lt. Wetzel testified that PRCs are panels made up of three individuals, usually a unit manager, deputy superintendent, and "maybe the Major of the guard." *Id.* at 43. Every 30 to 90 days, the status of inmates was reviewed "to evaluate their progress to see if they would be released from the RHU." *Id.*

another inmate who could, for example, translate for him in the "mini law library" in the RHU, the inmates could make a request and the prison would schedule the inmates together in the mini law library. *Id.* at 60. To Lt. Wetzel's recollection, Pabon never requested "that he wanted to be in [the mini law library in the RHU] with a Spanish-speaking inmate." *Id.* at 61. If an inmate requested assistance from another inmate, if the prison staff did not comply with the request, the staff would "get in trouble for it." *Id.* at 63.

Jennifer Newberry worked for the DOC for more than eight years. *Id.* at 64-65. She worked at SCI-Mahanoy as a corrections counselor from August 2004 until October 2012, and she was assigned to Pabon from 2004 until August 29, 2006. *Id.* at 65-66. While she was assigned as Pabon's counselor, she met with him weekly. *Id.* at 66. During Ms. Newberry's conversations with Pabon during this period, the conversations were always in English. *Id.* at 67. She never had any difficulty understanding him, and he never appeared to have any difficulty responding to her. *Id.* Ms. Newberry has been assigned to other inmates who required translation assistance, and she was able to accommodate them. *Id.* at 68. Pabon never requested assistance from a translator in having discussions with Ms. Newberry or in completing written inmate requests or other prison paperwork. *Id.* at 67-68. Moreover, he never expressed any complaint to her as his counselor that he had made such requests for a translator and had been denied them. *Id.* at 68. Pabon also never complained to his counselor related to access to the mini law library, access to any particular materials in Spanish or otherwise, or anything related to the mini law library. *Id.* Nor did Pabon seek education assistance or language instruction or complain about being denied any such assistance. *Id.* at 69.

William Tierno testified that he was an inmate in custody of the DOC serving a sentence

for theft, receiving stolen property, and forgery, and upon completion of that sentence he will begin serving a sentence for robbery.  *See* Evid. Hr'g 4/8/13 (Doc. 70), at 23.  He speaks English and Spanish.  *Id.*  He arrived at SCI-Mahanoy in 2007.  *Id.* at 25-26.  Tierno testified that he had experience with the law library at the RHU at Mahanoy including preparing petitions, objections to Reports and Recommendations, briefs, motions, and in particular, petitions for writs of habeas corpus and post-conviction petitions.  *Id.* at 26.  Tierno assisted Pabon with his objections to the Report and Recommendation related to his § 2254 petition.  *Id.*  Tierno stated that there were many legal materials in the mini law library in the Mahanoy RHU and that none of the materials were in Spanish.  *Id.* at 37.

Tierno testified that he had been assisting many inmates in preparing legal documents for approximately 20 years.  *Id.* at 40.  He stated that he "gained a reputation throughout the state prison system . . . with the type of work [he does] . . . because [he has] educated [himself]."  *Id.* at 46.  He indicated that the inmates who request his assistance do so because of his expertise and not necessarily because of an ability to communicate in Spanish.  *Id.*

Rodney Derrickson testified that he was serving a sentence after being convicted in 1995 for second degree murder and robbery.  *See* Evid. Hr'g 4/9/13 (Doc. 72), at 13.  During his incarceration, Derrickson assisted many other inmates in preparing legal documents related to civil rights cases, habeas corpus petitions, state post-conviction petitions, as well as grievances, in light of his knowledge of the law.  *Id.* at 14, 23.  He was incarcerated at SCI-Mahanoy from 2005 to approximately October 2008.  *Id.* at 13.  Mr. Derrickson testified that he assisted Pabon in preparing the Certificate of Appealability filed in the Court of Appeals related to Pabon's habeas petition.  *Id.* at 19.  He further testified that he was known in the prisons as one who

11

assisted inmates who needed help in preparing legal documents, regardless of their educational or language abilities. *Id.* at 22-23.

Prior to filing his § 2254 petition, in addition to submitting numerous prison grievances in English, on approximately September 4, 2007 Pabon filed a Complaint, pursuant to 42 U.S.C. § 1983, in federal district court against several individuals employed by the DOC. In *Pabon v. Chimielewski*, 2009 WL 2496723 (M.D. Pa. 2009), Pabon, proceeding *pro se*, challenged his treatment at SCI-Mahanoy. *Id.* at *1. Included in his challenges, Pabon asserted that a prison paralegal refused to help him with an appeal in state court, despite his lack of understanding of legal materials and his lack of proficiency in the English language. *Id.* In granting the defendants' motion to dismiss, the Honorable James M. Munley found, among other things, that: "Throughout the course of the instant case, [Pabon] has proven his ability to file numerous documents with the court." *Id.* at *5. The Clerk of Court received Pabon's civil rights Complaint in that case on September 4, 2007. *See Pabon v. Chimielewski*, Civil Dckt. No. 07-1613 (Ex. R-69). Among other filings in that case, Pabon also filed a brief in opposition to defendants' motion to dismiss, a Response to defendants' Motion to Stay, Objections to an R&R, an Amended Complaint, Objections to a second R&R, and a motion for reconsideration regarding the Memorandum and Order dismissing the case. *Id.*

The record reflects that Pabon was deposed on April 21, 2008 in connection with his federal civil rights lawsuit, and he responded *in English* to questions posed *in English. See* Pabon Dep. 4/21/08 (Ex. R-25). At his deposition, Pabon was able to discuss, among other things, his grievances against the prison and recounts a history with the facility involving several interactions he had with the prison staff. *Id.*

12

Russell Brought testified he has been employed with the DOC since January 3, 1992, and he has worked as a Lieutenant at SCI-Mahanoy since September 26, 2005.  *See* Evid. Hr'g 4/8/14 (Doc. 71), at 85.  During the period of January 2006 to April 2007, Lt. Brought was the RHU Lieutenant, and his job was to "monitor the orderly running of the RHU."  *Id.* at 86.  During the period Lt. Brought worked in the RHU, he interacted with Pabon "when [Lt. Brought] made a round," which he did "two or three times a day."  *Id.* at 87.  On the occasions that he had conversations with Pabon, Lt. Brought "never had any issue understanding [Pabon's] English."  *Id.* at 93.  Furthermore, on occasions when Brought walked out to the yard, he would clearly hear Pabon talking to the other inmates in English.  *Id.*

Lt. Brought testified that he "wrote [Pabon] up" one time for misconduct when Pabon threatened Lt. Brought.  *Id.* at 90.  In describing that incident, Lt. Brought testified that when he was making a round in the RHU, Pabon asked the Lieutenant why he "didn't get to go to [the] yard," and Brought responded "you got to follow the orders, you got to be ready."  *Id.* at 91.  Pabon replied to Brought in English, "I'll fuck your ass up.  I don't care who you bring to the cell."  *Id.* at 91.

William Beck testified that he worked for the DOC since July 18, 2005 and had been assigned to SCI-Mahanoy the entire time of his DOC employment.  *See* Evid. Hr'g 4/12/13 (Doc. 74), at 77.  He started as a CO trainee, was promoted to CO, and in approximately August or September 2006, he became a correctional counselor.  *Id.* at 77.  About two years prior to the evidentiary hearing, Mr. Beck became acting unit manager.  *Id.*

During the period of approximately August 2006 to about November 2007, Beck was assigned to Pabon as a correctional counselor in the RHU.  *Id.*  As part of his duties, Beck

13

checked on Pabon weekly during that time period "to check on him as far as any questions/concerns that he had." *Id.* These sessions with Pabon would generally last up to 10 minutes, and the conversations were always in English. *Id.* at 77-78. Mr. Beck testified that he "never struggled to understand what [Pabon] was saying or vice versa" in English. *Id.* at 78. Although in his counseling duties, Mr. Beck has worked with other inmates with a need for a translator's assistance, to Beck's recollection, Pabon never asked for translating assistance, and Pabon never expressed any need for assistance preparing inmate requests. *Id.* at 78-79. To Mr. Beck's recollection, Pabon never asked for education assistance or assistance in interacting with the education department. *Id.* at 79.

Chester Beggs testified that he was a corrections school principal, and he had been employed by the DOC for nine years. *See* Evid. Hr'g 4/12/13, at 87. Mr. Beggs stated that during the years 2004 to 2007, under the DOC policy, self-study services were available to inmates who were in the RHU under administrative custody. *Id.* at 89-90. Beggs confirmed that the policies at that time were not any different from what they were at the time of the evidentiary hearing. *Id.* at 90. Mr. Beggs reviewed Pabon's educational file and found that Pabon had made no requests for educational assistance at SCI-Mahanoy. *Id.* at 88. Inmates in the RHU under administrative custody were entitled to receive self-study materials on language instruction, as well as other educational assistance. *Id.* This material could be tailored to the individual or, upon the inmate's request, the prison would assign teachers to provide worksheets and workbooks. *Id.* Thus, an inmate in administrative custody in the RHU was provided a way to improve his or her English, including reading and writing skills. *Id.* An inmate who is placed in the RHU for disciplinary reason ("disciplinary custody") waives his entitlement to these

14

educational services.  *Id.* at 91.

Our Court of Appeals observed that "[w]hile there is not enough evidence in the record to determine whether Pabon's language deficiency actually caused the delay in bringing his habeas claim, an evidentiary hearing is warranted."  *See* Pabon, 654 F.3d at 392.  Following an evidentiary hearing, upon hearing the testimony and evaluating the credibility of all the witnesses' testimony (including witnesses referred to above and those not specifically referred to herein), based on first-hand observation of witnesses' demeanor, candor, and responsiveness in this case, and after consideration of all the evidence submitted, I find that the credible evidence indicates that Mr. Pabon's level of ability to communicate in the English language during the relevant time period,[8] along with all the other circumstances in this case, did not constitute extraordinary circumstances preventing the timely filing of a federal habeas petition.[9]  To the

---

8.  The relevant time period here includes the period from the date the statute of limitations began running, Aug. 12, 2002, until the date his § 2254 petition is deemed filed, which is no earlier than Sept. 20, 2007, *see supra* notes 1 and 5, and particularly during the period after the limitations period began running again after being statutorily tolled by the PCRA proceedings – between the date Pennsylvania's Supreme Court denied allowance of appeal on Pabon's PCRA petition on Aug. 8, 2006 until Sept. 20, 2007.  *See supra* note 5.

9.  It has been found that equitable tolling is appropriate only when a movant untimely files because of extraordinary circumstances *beyond the litigant's control*.  *See, e.g., Holland*, 560 U.S. at 657 (Alito, J., concurring); *Sandvik v. United States*, 177 F.3d 1269, 1271 (11th Cir. 1999) ("Equitable tolling is appropriate when a movant untimely files because of extraordinary circumstances that are both beyond his control and unavoidable even with diligence."); *Delaney v. Matesanz*, 264 F.3d 7 (1st Cir. 2001); *Flewellen v. Folino*, 2014 WL 4197802, *4 (E.D. Pa. 2014) ("[Petitioner] has offered no circumstances beyond his control that prevented him from complying the federal habeas statute.").  To the extent that petitioner's claim of equitable tolling may be construed as alleging that his placement in the RHU contributed toward the extraordinary circumstances preventing the timely filing of a § 2254 petition, in that the evidence indicates that it was his actions and misconduct which resulted in his placement in the RHU, it cannot properly be said that that factor was a circumstance beyond his control.  In any event, as explained, the credible evidence submitted in this case supports the finding that Pabon has failed to demonstrate that his level of ability to communicate in English, along with

extent that witnesses' testimony supports a contrary finding, I find that, based on first-hand observation of witnesses' demeanor, candor, and responsiveness in this case, such testimony was not credible.

Pursuant to Local Appellate Rule 22.2 of the Rules of the United States Court of Appeals for the Third Circuit, at the time a final order denying a habeas petition is issued, the district judge is required to make a determination as to whether a certificate of appealability should issue. When a federal court denies a habeas petition on procedural grounds without reaching the underlying constitutional claims, a COA may not issue unless the prisoner demonstrates that jurists of reason would find it debatable: (1) whether the petition states a valid claim of the denial of a constitutional right; and (2) whether the district court was correct in its procedural ruling. Slack v. McDaniel, 529 U.S. 473, 484 (2000); see Miller-El v. Cockrell, 123 S. Ct. 1029, 1046 (2003) (Scalia, J., concurring).

"Where a plain procedural bar is present and the district court is correct to invoke it to dispose of the case, a reasonable jurist could not conclude either that the district court erred in dismissing the petition or that the petitioner should be allowed to proceed further." Slack, 529 U.S. at 484. Here, for the reasons set forth above, a reasonable jurist could not conclude that the Court would be incorrect in dismissing the petition as time-barred. See Slack, 529 U.S. at 484. Accordingly, a COA should not issue.

An appropriate Order follows.

---

the other particular circumstances in this case, constituted extraordinary circumstances preventing the timely filing of a federal habeas petition.